IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ECOLOGY CENTER, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. CV04-557-C-EJL |
| ) | |
| vs. ) | ORDER |
| ) | |
| ABIGAIL KIMBELL, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

      Pending before the Court in the above entitled matter is Plaintiffs' motion for preliminary injunction. Plaintiffs seek to prohibit logging, road construction, and other actions in relation to two decisions approving timber sales in the Clearwater National Forest. Defendants oppose the motion and the matter has been fully briefed and is ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1.

**Factual and Procedural Background**

      At issue in this case are two decisions of the United States Forest Service (USFS) approving two projects - namely Brick Trout ("BT") and White/White ("WW") - located within the Clearwater National Forest ("CNF") in central Idaho. The projects involve three timber sales and various watershed restoration activities. An environmental assessment ("EA") was completed for each project and released to the public; the BT project EA was issued in December of 2002 and the WW project EA was issued on March 6, 2003. Based on the EA's, the USFS made findings of no significant impact ("FONSI") on the projects - on March 19, 2003 for BT and June 3, 2003 for WW - and, therefore, determined that neither project required an environmental impact statement ("EIS"). Both projects were eventually approved. Following the filing of unsuccessful

administrative appeals on the projects, the Plaintiffs brought this action in the District of Montana which was then transferred to this District. (Dkt. No. 1).

Plaintiffs seek entry of preliminary injunction in this matter to preclude implementation of the projects on the grounds that the USFS' approval of the projects violated the National Environmental Policy Act ("NEPA") by creating two separate EA's for each project, and thereby failing to properly analyzing the cumulative impact of the two projects, and failing to compile an EIS. In addition, Plaintiffs argue the USFS did not comply with the National Forest Management Plan ("NFMA") by failing to "monitor and assure viable populations of wildlife species that depend on the mature forest habitats which will be at risk in these project areas. Specifically, that the projects do not comply with the CNF plan for management indicator species such as the northern goshawk and the pileated woodpecker. Defendants oppose the motion arguing the Plaintiffs are not likely to succeed on the merits of their claims and they have failed to demonstrate that the balance of harms or the public interest weighs in their favor.

## Standard of Law

A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment. Textile Unlimited, Inc. v. A. BMH Co., Inc., 240 F.3d 781 (9th Cir. 2001) (citing Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Dollar Rent a Car v. Travelers Indem., 774 F.2d 1371, 1374 (9th Cir. 1985) (citation omitted). More recently, the Ninth Circuit has developed an alternative test for granting a preliminary injunction which requires the court to balance the movant's likelihood of success on the merits against the relative hardship to the parties. See Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999); Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1118 (9th Cir. 1999). Thus, in this circuit a party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised

and the balance of the hardships tips in its favor. Textile Unlimited, Inc. v. A. BMH Co., Inc., 240 F.3d 781 (9th Cir. 2001); see also Tillamook County v. United States Army Corps of Engineers, 288 F.3d 1140, 1142 (9th Cir. 2002). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Id.     Regardless of the criteria employed, whenever the public interest is involved, it must be a necessary factor in the Court's consideration of whether to grant preliminary injunctive relief. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). Further, "[a] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Services, 844 F.2d at 674. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Id.

**Discussion**

1)   Motion for Preliminary Injunction:

Plaintiffs argue injunctive relief is proper because the USFS violated NEPA by failing to issue one cumulative EIS analyzing both projects given the projects' size, amount of timber removal, and impact on wildlife. In particular, Plaintiffs challenge the failure of the USFS to consider the cumulative impact of the two projects given their close proximity to each other and location in the same drainage. Further, Plaintiffs claim that the USFS violated NFMA as to the impact on old growth and management indicator species. As a result, Plaintiffs argue, an injunction is needed to prevent implementation of the projects that would further harm the area. Defendants argue the Court should deny the motion because the Plaintiffs are not likely to succeed on the merits of their claims and the balance of the harms does not tip in their favor.

   a)   NEPA Violations:

"NEPA is a procedural statute that does not 'mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions.'" High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630, 639 (9th Cir. 2004) (quoting Neighbors of Cuddy Mtn. v. Alexander, 303 F.3d 1059, 1070 (9th Cir. 2002) (internal quotation marks omitted)). The "twin aims" of NEPA are to, first, impose upon a federal

"agency the obligation to consider every significant aspect of the environmental impact of a proposed action" and, "[s]econd, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decision making process." Kern v. United States Bureau of Land Management, 284 F.3d 1062, 1066 (9th Cir. 2002) (quoting Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97 (1983) (citation and internal quotation marks omitted)).

To achieve these aims, NEPA "mandates that an EIS be prepared for all 'major Federal actions significantly affecting the quality of the human environment.'" High Sierra Hikers, 390 F.3d at 639 (quoting 42 U.S.C. § 4332(2)(C)). "As a preliminary step, the agency may prepare an [EA] to determine whether the environmental impact of the proposed action is significant enough to warrant an EIS." Id. (citing National Parks & Conservation Ass'n v. Babbitt, 241 F.3d 722, 730 (9th Cir. 2001) and 40 C.F.R. § 1508.9)). "If the EA establishes that the agency's action 'may have a significant effect upon the environment' then an EIS must be prepared." Id. at 640. If, however, the project will only have an insignificant effect, the agency will issue a FONSI. Ocean Advocates v. United States Army Corps. of Engineers, 2005 WL 525269, at * 12 (9th Cir. March 4, 2005). "[A]n agency's decision not to prepare an EIS is reviewed under the arbitrary and capricious standard; however, where an agency has decided that a project does not require an EIS without first conducting an EA, we review under the reasonableness standard." Id. (citations omitted).

In this case, the FONSI for both projects concluded that the projects were not major federal actions and did not pose significant effects on the environment and, thus, no EIS was required. The Court disagrees. "The purpose of NEPA is to 'bring environmental considerations to the attention of federal decision-makers.'" Ka Makani O Kohala Ohana Inc. v. Water Supply, 295 F.3d 955, 960 (9th Cir. 2002) (finding the federal agency's advisory role on a state or local project does not constitute a major federal action). Although there are "no clear standards" for defining a major federal action, the decision is matter of degree considering whether federal funds are used and the extent of federal involvement. Id. (citations omitted). The projects in this case are clearly federal actions. Thus, the question in this case is whether or not they pose no significant side effects to the quality of the human environment.

"Whether there may be a significant effect on the environment requires consideration of two broad factors: 'context and intensity.'" National Parks & Conservation Ass'n. v. Babbitt, 241 F.3d 722, 731 (9th Cir. 2001) (citations omitted).[1] "Context simply delimits the scope of the agency's action, including the interests affected" and "Intensity relates to the degree to which the agency action affects the locale and interests identified in the context part of the inquiry." Id. In addition, "An agency must generally prepare an EIS if the environmental effects of a proposed agency action are highly uncertain. Preparation of an EIS is mandated where uncertainty may be resolved by further collection of data, or where the collection of such data may prevent 'speculation on potential...effects. The purpose of an EIS is to obviate the need for speculation by insuring that available data are gathered and analyzed prior to the implementation of the proposed action.'" Id. (citations omitted). Where an agency decides to not prepare an EIS "it must put forth a 'convincing statement of reasons' that explain why the project will impact the environment no more than

---

[1] As defined in 40 C.F.R. § 1508.27, "Significantly" as used in NEPA requires considerations of both context and intensity:
(a) Context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality. Significance varies with the setting of the proposed action. For instance, in the case of a site-specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole. Both short- and long-term effects are relevant.
(b) Intensity. This refers to the severity of impact. Responsible officials must bear in mind that more than one agency may make decisions about partial aspects of a major action. The following should be considered in evaluating intensity:
> (1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
> (2) The degree to which the proposed action affects public health or safety.
> (3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.
> (4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.
> (5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.
> (6) The degree to which the action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration.
> (7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.
> (8) The degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register of Historic Places or may cause loss or destruction of significant scientific, cultural, or historical resources.
> (9) The degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973.
> (10) Whether the action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment.

ORDER - Page 5
05ORDERS\Ecology04-557.WPD

insignificantly. This account proves crucial to evaluating whether the [agency] took the requisite 'hard look' at the potential impact of the [project]." Ocean Advocates, 2005 WL 525269, at *12.

One such factor used to determine whether an EIS is necessary is whether "it is reasonable to anticipate a cumulatively significant impact on the environment." Id. (citing 40 C.F.R. § 1508.27(b)(7)). A cumulative impact is defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions ... [and] ... can result from individually minor but collectively significant actions taking place over a period of time." Id. (quoting Kern v. United States Bureau of Land Mgmt., 284 F.3d 1062, 1075 (9th Cir. 2002)); see also 40 C.F.R. § 1508.7. "Moreover, in considering cumulative impact, an agency must provide 'some quantified or detailed information;...[g]eneral statements about possible effects and some risk do not constitute a hard look absent a justification regarding why more definite information could not be provided. This cumulative analysis 'must be more than perfunctory; it must provide 'a useful analysis of the cumulative impacts of past, present, and future projects." Id. (citations omitted). Where the agency's decision of cumulative impact is "fully informed and well considered, [courts] should defer to that finding. On the other had, we need not forgive a clear error in judgment." Id. (quotation marks and citations omitted).

At the end of each FONSI issued in this case includes a brief discussion of each of the impact considerations enumerated in 40 U.S.C. § 1508.27(b). Notably, both FONSI's were virtually identical in their language. Both relied, by reference, on the project's EA as the basis for its reasoning. Neither FONSI, however, offered any real substantive analysis or evaluation of the factors. In addition, there was no discussion, consideration, or analysis of the cumulative impact of the two projects in either EA or FONSI. The government argues that the EA's mention the other project. The mentioning of the other project, however, offers no real discussion or analysis of the cumulative impact of the two projects on the vegetation in the area. Thus, the Court cannot say that the USFS took the requisite "hard look" at the impact these projects will have on the area as a whole. Certainly the approval to harvest significantly more timber in these two projects alone than has been harvested in the past three years warrants consideration as to the cumulative impact of the

projects to the area. The government challenges this conclusion arguing that the volume of timber does not exceed the amount harvested prior to 2000. This argument, however, only serves to highlight that there has been extensive past timber activity in this area which, when combined with the current proposals, will have a cumulative environmental effect which should be considered and analyzed. Regardless of the past harvests, the projected volume of timber harvested or otherwise impacted in these projects is significant and warrants more discussion and analysis.

After having reviewed the parties' arguments on the motion and considering the relevant case law in this circuit, the Court finds the USFS' failure to conduct a sufficient analysis of the cumulative impact of the two projects and failure to prepare an EIS may have been arbitrary and capricious.[2] Although the Court may ultimately decide otherwise, it does not appear that the USFS addressed the cumulative environmental impact of the projects. Because the separate EA's do not include discussions of the other project, beyond a mention in the aquatic sections of the reports, given the fact that they are located in the same drainage, they will occur at similar times, and are in relatively close proximity, the USFS should have considered and analyzed the cumulative impact of the two projects on the environment. The Court finds the EA's in this case do not adequately discuss or analyze the cumulative environmental impact of the projects and, therefore, the USFS's findings of no significant impact and, thus no need for an EIS, was in error.

      b)      NFMA Violations:

As to the Plaintiffs' NFMA arguments the Court finds that Plaintiffs have demonstrated a probability of success on the merits. National forests are managed via the "statutory framework" of NFMA which establishes a two-step process for forest planning. See Neighbors of Cuddy Mountain v. United States Forest Service, 137 F.3d 1372, 1376 (9th Cir. 1998). First, the USFS must develop a land resource management plan and EIS for the entire forest and, second, implementation of the management plan on a site-specific basis. Id. "A site-specific decision, such as one to sell timber, must be consistent with the [management plan]." Id. (citing Inland Empire

---

[2]Each side has filed motions to strike. In ruling on this motion the Court considered only the administrative record in this case and, therefore, the motions are deemed moot.

Public Lands Council v. United States Forest Serv., 88 F.3d 754, 757 (9th Cir. 1996); 16 U.S.C. § 1604(I), 36 C.F.R. § 219.10(e)).

"NFMA requires that the Forest Service identify Indicator Species, monitor their population trends, and evaluate each project alternative in terms of the impact on both Indicator Species habitat and Indicator Species populations." The Lands Council v. Powell, 395 F.3d 1019, 1035 (9th Cir. 2005) as amended (citing Idaho Sporting Cong., Inc. v. Rittenhouse, 305 F.3d 957, 971-74 (9th Cir. 2002)). The Ninth Circuit has "in appropriate cases, allowed the Forest Service to avoid studying the population trends of the Indicator Species by using Indicator Species habitat as a proxy for Indicator Species population trends in a so-called "proxy on proxy" approach. Crucial to this approach, however, is that the methodology for identifying the habitat proxy be sound. If the habitat trend data is flawed, the proxy on proxy result, here species population trends, will be equally flawed." Id. (citations and footnote omitted).

Upon reviewing each of the EA's analysis as to the impacts on the management indicator species ("MIS") in this case, the Court agrees with Plaintiffs that the USFS may have failed to properly monitor certain MIS, namely the pileated woodpecker and northern goshawk, as directed by the Forest Plan. In addition, the analysis of the habitat and populations for these MIS' is generalized and void of any real discussion of the projects' impact on the MIS'. In particular, the EA for the BT project analyzed habitat in only OGAU 105 and 108 and then provided a forest-wide projection of the habitat for the MIS creatures. As to the northern goshawk, the BT project EA determined that although there had been no sightings, the fact that the area had suitable habitat evidenced that the species must reside in the project area. Such conclusions do not appear to provide a reasonable method for analyzing the MIS nor the projects' impacts thereupon.

    c)    <u>Conclusion</u>:

Having considered the parties arguments above, the Court finds the motion for a preliminary injunction should be granted. The possibility of irreparable injury in this case is great. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration , i.e., irreparable." National Parks, 241 F.3d at 737 (noting that where a project "may significantly degrade some human environmental factor"

injunctive relief is appropriate) (citations omitted).  In addition, there exist serious questions regarding whether the USFS engaged in the requisite "hard look" before approving these projects, thus, the Plaintiffs may succeed on the merits of their claim.  Therefore the Plaintiffs' motion for preliminary injunction shall be granted.  Specifically, the USFS shall refrain from engaging in implementation of the projects until such time as the Court has resolved this matter.  This applies to the two timber sales which have not yet been finalized.  As to the timber sales contract already executed on the BT project, the Court directs that the parties cease their operations.  However, the timber company may remove any timber that has already been fallen under the contract.

2)      <u>Motion to Intervene</u>:

In addition, Bennett Lumber Products ("Bennett") has filed a motion to intervene.  The motion is made pursuant to Federal Rule of Civil Procedure 24 on the grounds that the Bennett seeks to defend against the claims brought by the Plaintiffs because Bennett has an economic and non-economic interest directly affected by this suit.  Failure to allow such intervention, Bennett argues, would "impair or impede its ability to protect these interests because it is not adequately represented by the existing parties."  Bennett holds an existing timber sales contracts in the Clearwater National Forest and is currently operating under the Brick Timber Sale which has been directly implicated in this matter.  In addition, Bennett maintains it has an interest in forest management which "do not necessarily coincide with those of the plaintiffs or defendants" such that Bennett has actively participated in the forest management plan for this area.

Intervention by right, as applicable in this case, is governed by Rule 24(a)(2) which requires that one file a timely application claiming "an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical mater impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit has established "a four part test for determining, under Rule 24(a), if an applicant has a right to intervene: (1) the motion must be timely; (2) the applicant must assert a 'significantly protectable' interest relating to property or a transaction that is the subject matter of litigation; (3) the applicant must be situated so that disposition of action may as a practical matter impair or

impede the interest; and (4) the applicant's interest must be inadequately represented by the parties."  Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1108 (9th Cir. 2002) (citing Wetlands Action Network v. United States Army Corps of Eng'rs, 222 F.3d 1105, 1113-14 (9th Cir. 2000); Sierra Club v. United States E.P.A., 995 F.2d 1478, 1481 (9th Cir. 1993)).

It appears the application is timely, thus, the issue becomes whether the applicant has identified an interest warranting intervention.  Bennett contends its several timber sale contracts, specifically that as to the Brick Timber Sale, constitute legal interests affected by the claims raised in this action.  In addition to the contract interests, Bennett argues it has an interest in ensuring a continuous timber supply and in the proper management of the forest consistent with the forest plan.  Bennett also challenges that it has a right to defend against the Plaintiffs' allegations regarding their logging practices in the area.  Finally, Bennett asserts a socio-economic interest in the quality of life in the surrounding communities and environmental interests.  The Ninth Circuit, however, has stated

> We read our precedent to hold that the private intervenors in this NEPA action may not intervene as of right pursuant to Rule 24(a). "As a general rule, 'the federal government is the only proper defendant in an action to compel compliance with NEPA.'" Wetlands, 222 F.3d 1105, 1114 (quoting Churchill County v. Babbitt, 150 F.3d 1072, 1082); see also Portland Audubon Society v. Hodel, 866 F.2d 302, 309 (9th Cir. 1989).  This rule is based on the premise that private parties do not have a "significant protectable interest" in NEPA compliance actions.  As explained in Wetlands: "The rationale for our rule is that, because NEPA requires action only by the government, only the government can be liable under NEPA. Because a private party can not violate NEPA, it can not be a defendant in a NEPA compliance action." Wetlands, 222 F.3d at 1114 (internal quotations and citations omitted). Based on this precedent, we conclude that the district court erred to the extent it permitted intervention as of right under Rule 24(a).

Id. at 1108.  In his reply, Bennett notes the above decision but argues that because Plaintiffs have asserted claims pursuant to both NEPA and NFMA, that his interest under NFMA are distinct from NEPA and such that intervention as of right is warranted.  Bennett also argues that without intervention it will have no adequate legal means to defend against the Plaintiffs' claims or protect its interests because factual and legal determinations in this case cannot be challenged in another legal forum.  Finally, Bennett asserts its interests are not adequately represented by the existing parties because certain of the Plaintiffs' arguments represent private environmental positions to

which Bennett possesses contrary private interests; specifically as to changes in the management of the Clearwater National Forest and alleged violations of environmental statutes.  Bennett maintains that the named federal Defendants cannot adequately represent their interests because they must represent a broad public interest and do not posses the strong interest of Bennett in avoiding a reduction in timber supply.

Based on the Ninth Circuits clear decision in Kootenai Tribe the Court agrees that Bennett does not qualify for intervention of right pursuant to Rule 24(a).  The Court has also considered Bennett's argument regarding the distinction between NEPA and NFMA but does not agree that because the Plaintiffs' claims allege NFMA violations that Rule 24(a) warrants intervention.  However, Bennett has also sought permissive intervention pursuant to Rule 24(b).  Intervention on this basis is a matter of discretion with the Court.  "Unlike Rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'"  Kootenai Tribe, 313 F.3d at 1108 (citing Fed.R.Civ.P. 24(b)).  "Rule 24(b) 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" Id. (quoting SEC v. United States Realty & Improvement Co., 310 U.S. 434, 459 (1940)).  "The rule requires only that his claim or defense and the main action have a question of law or fact in common.... If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention." Id. (citation omitted).

While Bennett may have standing in this case[3], having considered the interests expressed above and the arguments in their brief, the Court declines to exercise its discretion to allow intervention pursuant to Rule 24(b).

---

[3] Before granting intervention under Federal Rule of Civil Procedure 24(b), courts "must first determine whether intervenors have Article III standing to pursue [their claims] without the government as an appellant, leaving intervenors as the only parties on appeal adverse to plaintiffs." Kootenai Tribe, 313 F.3d at 1108.  Such that a court should "find 'independent jurisdictional grounds....'" Id. (quoting Didrickson v. United States Dep't of the Interior, 982 F.2d 1332, 1337-38 (9th Cir. 1992) (citations omitted).

ORDER - Page 11
05ORDERS\Ecology04-557.WPD

## ORDER

Based on the forgoing and being fully advised in the premises, the Court **HEREBY GRANTS** Plaintiffs' motion for preliminary injunction (Dkt. No. 1) as detailed above. Plaintiffs' motion for a hearing and second motion for hearing are **MOOT** (Dkt. Nos. 1, 7). The motion to intervene is **DENIED**. The motions to strike (Dkt. No. 1) are **DEEMED MOOT**.

DATED: **April 28, 2005**

Honorable Edward J. Lodge
U. S. District Judge